UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES GORMAN INSURANCE, INC. and
JAMES M. GORMAN,

    Plaintiffs,

v.                                                        Case No: 8:16-cv-816-T-27AEP

BANKERS INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** are Bankers Insurance Company's Motion for Leave to File Amended Counterclaims Against Plaintiffs, and Third Party Complaint Against Jim Gorman Insurance Agency (Dkt. 100), and Plaintiffs' response (Dkt. 117). A case management conference was held on February 15, 2017, and the record is incorporated herein. Upon consideration, the Motion is **GRANTED**.

**I.   BACKGROUND**

According to the Complaint, Plaintiff James Gordon Insurance, Inc. ("JGI") is a customs surety bond producer that assists importers obtain customs surety bonds from issuers like Defendant Bankers Insurance Company ("Bankers"). In 2010, JGI and Bankers executed a Producer Agreement whereby Bankers was to compensate JGI for soliciting and issuing surety bonds and collecting premiums on Bankers' behalf. (Dkt. 1 ¶¶ 9-10). On April 24, 2015, JGI sued Bankers in Massachusetts District Court. (¶ 11). Bankers sued Plaintiffs in the Middle District of Florida, five days later. (¶ 12).

1

The parties commenced arbitration in both cases and mediated on December 1, 2015, which resulted in the execution of a written mediation settlement agreement (Dkt. 9-1). (¶¶ 13, 17). Plaintiffs' Complaint alleges claims for breach of the settlement agreement, breach of implied covenant of good faith and fair dealing, tortious interference, declaratory judgment, and breach of oral contract against Bankers, and fraud in the inducement and negligent misrepresentation against all defendants. (Dkt. 1). Bankers filed a one count, breach of contract counterclaim against JGI alleging that JGI failed to pay the full $120,000 and failed to and refused to direct gross premiums to the lockbox set up by Bankers. (Dkt. 9). Plaintiffs claims against the individual defendants have since been dismissed.

## II. STANDARD

Rule 15 scheduling orders "control the subsequent course of the action unless modified by a subsequent order," Fed. R. Civ. P. 16(e), and may be modified only "upon a showing of good cause." Fed. R. Civ. P. 16(b); *see Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). When a motion for leave to amend is filed after the scheduling order's deadline, a two-step analysis is appropriate. *Sosa*, 133 F.3d at 1419. First, the movant must demonstrate "good cause" under Rule 16(b). *Morrissey v. ASD Shared Servs., LLC*, 626 F. App'x 946, 953 (11th Cir. 2015) ("A plaintiff who seeks to amend the complaint after a deadline designated in a scheduling order must demonstrate good cause under Rule 16(b) of the Federal Rules of Civil Procedure."). Good cause exists when the deadline could not "be met despite the diligence of the party seeking the extension." *Id.*; *see* Fed. R. Civ. P. 16 *adv. comm. notes*.

In *Sosa*, three factors were considered in assessing diligence: (1) whether the plaintiff failed to ascertain facts prior to filing the complaint or failed to acquire information during the discovery

period, (2) whether the information supporting the proposed amendment was available to the plaintiff, and (3) whether, even after acquiring the information, the plaintiff delayed in requesting leave to amend. *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002); *see Sosa*, 133 F.3d at 1419.

If the movant demonstrates "good cause," the Rule 15(a) standard is applied. *Sosa*, 133 F.3d at 1419. Rule 15(a) requires that leave to amend "be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see* Fed. R. Civ. P. 15(a)(2) (same). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." *Id.* Leave may be denied, however, where the proposed amendment would be futile. *Id.*

The deadline to move to amend pleadings was 10 days after the discovery cut-off date, which was November 15, 2016 (Dkt. 29). Bankers' motion was filed on January 19, 2017. Therefore, Bankers must satisfy the good cause requirement of Rule 16.

### III.   DISCUSSION

Bankers seeks to add counterclaims against Plaintiffs for conversion, civil theft, and fraud, and to bring claims for conversion, unjust enrichment, civil theft, and fraud against the Jim Gorman Insurance Agency, Inc. as a third-party defendant. Bankers contends that it learned on December 16, 2016 from Plaintiffs' discovery production that Plaintiffs have "used JGI Agency in order to invoice and collect premiums from subproducers on customs bonds for which Bankers is the surety. JGI Agency deposited these unauthorized premiums into a bank account maintained with the Digital Federal Credit Union in Massachusetts" and that this bank account was never disclosed to Bankers prior to the discovery cutoff date. (Dkt. 100 at 2-3).

3

Plaintiffs oppose amendment because they contend that Bankers was well aware of the JGI Agency before Plaintiffs' December 16, 2016 production and the November 25, 2016 deadline for amending pleadings and that Bankers cannot, therefore, demonstrate due diligence or good cause. Specifically, Plaintiffs claim that Bankers was in possession of invoices from the JGI Agency to subproducers for bond premiums, which it produced to Plaintiffs in discovery, and that the JGI Agency even enlisted Bankers' assistance in collecting premiums from Taca International Airlines, S.A. (*See* Dkts. 117-2, 117-3).

While it may be that Bankers was previously aware of, or should have been aware of, the existence of the JGI Agency, it appears that Bankers only learned of the alleged issuance of bonds by the JGI Agency on behalf of Bankers, and collection of premiums which were deposited into a separate JGI Agency bank account when the discovery related to bank records was compelled in December 2016. It is also apparent that Bankers made numerous attempts through discovery to timely ascertain information related to subproducer invoices, the collection of premiums, and bank accounts, which were met with resistence from Plaintiffs. (*See* Bankers' discovery requests, Dkts. 5-9, 11-14).

And, contrary to the document that indicates the JGI Agency enlisted Bankers' assistance in collecting premiums from Taca, Plaintiffs expressly alleges in the Complaint that the invoice for payment of the renewal on the bond placed for subproducer, Taca International Airlines, S.A., was sent by **JGI**, that **JGI** send demand letters and e-mails to both Taca and Perry Insurance in an effort to collect on the outstanding amounts, that **JGI** threatened that Taca's bond would be terminated for nonpayment, that **JGI** requested that Bankers terminate the Taca bond, and that Bankers has failed to either terminate the Taca bond or utilize a line of credit to pay **JGI's** outstanding invoices. (Dkt. 1 ¶¶ 69-76, 144) (emphasis added).

Given the delay by Plaintiffs in producing discovery related to subproducer invoices, the collection of premiums, and bank accounts, I find that Bankers has shown good cause to amend its pleadings at this late stage under Rule 16(b). And, while the pretrial conference and trial are looming, given the fact that deadlines and trial dates were expedited in hopes of quick and efficient resolution, which as previously noted has failed, it will not be prejudicial to Plaintiffs to allow this amendment at this stage.

Accordingly,

1. Bankers Insurance Company's Motion for Leave to File Amended Counterclaims Against Plaintiffs and Third Party Complaint Against Jim Gorman Insurance Agency (Dkt. 100) is **GRANTED**. Bankers may file its amended counterclaims and third party complaint within **five (5) days**. The pretrial conference set for Friday, March 10, 2017 is cancelled and this case is removed from the April 2017 trial term. The parties shall confer and submit a joint scheduling proposal for this case to proceed within **fourteen (14) days**.

2. Bankers' Motion for Sanctions (Dkt. 96) is **DENIED** *without prejudice*. It is not readily apparent on this record that Gorman gave false testimony or that Plaintiffs concealed evidence, as opposed to a mistake or oversight, precluding a finding of bad faith at this time.[1] To the contrary, most, if not all, of Bankers' contentions of in this motion go to the merits of the parties' claims.

3. Bankers' Motion for Summary Judgment (Dkt. 86) remains under advisement.

**DONE AND ORDERED** this 7th day of March, 2017.

*/s/ James D. Whittemore*
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record

---

[1] The Supreme Court has stated that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). The Eleventh Circuit has explained that "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir.2001).